Dargan, Ch.,
delivered the opinion of the court.
The late Nicholas Herbemont, by his will, dated the 3rd of September, A. D. 1836, devised and bequeathed his whole estate, real and personal, after the death of his wife, to his grand-son, Paul Bofil, during his life, to be put in his possession when he should attain the age of twenty-one years. The will further provides: “should he (Paul Bofil) die, leaving a wife, and children alive at the time of his death, I devise and bequeath one-fourth of said estate to his wife, and the remaining three-fourths to his child or children, including the descendants of any one that may have died before him. Should the said Paul Bofil die, leaving no widow, I devise the whole of my estate to his children living at his death, including the descendants of any that may have died during his life. Should he die, leaving no children or descendants living at his death, I devise and bequeath to his widow one-fourth, and the remaining three-fourths I devise and bequeath as follows: to wit, one-half to my grand-son, Alexander Herbemont, and such other children as my son Alexander, by his present or any future marriage, may have living at that period, and the descendants of any that may have died; and the other half to such of my relations in France, then living, as may be entitled to inherit from me as next of kin, *3 according to the laws of this State, if I had died without lineal descendants. To give effect to this bequest, I direct that the half thus allotted to them be taken from the personal property, as they cannot hold real estate.”
“ If the said Paul Bofil should die, leaving neither wife nor child, nor other lineal descendants alive at the time of his death, then the provision made for his widow, in the last clause above, I devise and bequeath as the other property mentioned in that clause.”
By the seventh clause of the second codicil, the testator directs that the following words he added to the foregoing clause,, at the end thereof, to wit: “ So that my said grand-son shall take absolutely one-half of my whole estate, and my next of kin in France shall take the other half.”
When Paul Bofil attained the age of twenty-one years, he was put in possession of the property, according to the directions of the will. Having become largely indebted, judgments were recovered against him, and executions lodged, by virtue of which,, his life estate in the greater portion of the property left to him. by his grand-father, has been sold by the sheriff. The sales by the sheriff, and the voluntary sales by Paul Bofil himself, embrace all the real estate; and the personal property has been entirely dissipated. Paul Bofil has contracted matrimony, and has a wife, who is living, and several children, who are infants, all of whom, with the wife, are parties in proper form to these proceedings. Having wasted his entire estate, and having no profession or trade, he is under the necessity of earning a scanty subsistance for himself and family, by his wages as a common laborer. They are reduced to the lowest state of poverty and destitution. And the children, with a comfortable estate in expectancy, contingent upon the death of their father, are, in the mean time, suffering from hunger and nakedness, and are being brought up without education, either mental or moral.
The sales by the sheriff, as well as those made voluntarily by Bofil himself, were at very inadequate prices, when the prices are considered in reference to the fee-simple value of the pro *4 perty. But the real estate consists principally of unimproved lots in the town of Columbia, with several tracts of land in the district of Richland. The purchasers cannot with any safety or prudence improve real estate, the title of which, as to duration, is so uncertain. Under these circumstances, the purchasers of these lots and lands, who are parties to this bill, are willing to surrender their titles, on having the purchase money repaid to them; provided the Court will undertake to sell the fee-simple of the property, and, from the fund thence arising, to repay the purchase money with the cost of the proceedings, and from the residue, create a fund from the interest or dividends, on which a present support may be provided for the support and maintenance of Paul Bofil and family. The Bofils and the purchasers of the property who hold a life estate, concur, and the guardian ad litem of the infant parties deem it advisable and greatly to the interest and comfort of the family, that the prayer of the bill should be granted.
The cause was heard at June Term, 1850. The presiding Chancellor ordered it to be referred to the Commissioner to report upon the facts, and the Commissioner at the same Term submitted his report, in which he states the prices at which the different lots and tracts of land were sold, and their estimated present value, which he arrives at by the examination of testimony. From this report it appears that the present estimated value of the fee in the lots and tracts very far exceeds the prices for which the estate of Bofil in the same has heretofore been sold, either by the sheriff or himself. It thus appears that, by the sale of only a portion of the estate in fee, a fund could be raised by which the prices paid by the purchasers, (which they are now willing to take without interest,) could be refunded to them, leaving a balance that might be invested for the benefit of Bofil and his family, yield them a permanent and comfortable support, and at the same time be preserved, to be hereafterwards disposed of according to the directions of the will of Nicholas Herbemont.
Under these circumstances, the Circuit Court decreed a sale *5 in fee of certain lots and portions of the said real estate designated in the decree, aiming to raise the sum of ten thousand dollars, or thereabouts, to be invested for the purposes and in the manner prescribed in the circuit decree, the particulars of which are not necessary to the full understanding and decision of this appeal.
From this decree an appeal has been taken on the part of Mary J. Bofil, one of the defendants, and an infant child of Paul Bofil, who moves to reverse the decree, on the ground “ that this Court has not jurisdiction or authority to order the sale of her contingent interest in the estate devised to her by her grand-father, nor of the interest of such other children as Paul Bofil may hereafter have, and who may be living at his death ; nor of the interest of the contingent remainder-men in France, who are not parties; and that the purchaser can acquire no valid title in fee to the premises which may be sold under such circumstances.”
The appeal brings up a great and important question, which was much discussed, but which was left undecided, in the case of Van Lew vs. Parr, (2 Rich. Eq. 321.) It is a matter of great surprise, that a question like this, constantly arising or likely to arise out of the daily transactions in the Court of Equity, should have been so long deferred.
If, under the circumstances of this case, an order for sale in Chancery should be insufficient to confer a valid title upon the purchaser, I apprehend the title to an inconceivable amount of property in South Carolina would be put in peril. And were there stronger reasons than do actually exist, to doubt the authority of this jurisdiction in the particular mentioned, the Court would hesitate long before it would announce a judgment which would shake, perhaps, one-fourth of the titles in the State.
The difficulty, if any exists, does not lie in the first branch of the appeal, which relates to the right of the Court to sell the contingent interest of Mary J. Bofil, who is an infant child of Paul Bofil, and a party defendant, by guardian ad litem, to the bill. The right of the Court to sell either the vested or contin *6 gent estates of infants, who can be and are properly made parties before it, cannot at this day be questioned. But the question is, whether the Court has the power, by its decrees, to alienate, the contingent titles of unborn remainder-men, who, from the nature of things, cannot be made parties, or be represented in the proceedings before the Court; or to alienate the contingent titles of persons who, though in esse, are resident in other States, or in foreign lands, whose residences and even whose names are unknown.
To say that the Court could not under circumstances like these-convey away the fee, would be to assert a doctrine that would render conditional limitations and contingent remainders an intolerable evil to a growing and prosperous community. Thus to shackle estates without the power of relief, unless every person having a contingent and possible interest could be brought before the Court, as a party complainant or defendant, according to the usual forms and ordinary practice of the Court, would be to sacrifice the rights and interests of the present generation to those of posterity, and of citizens to aliens. If the whole property of the country were thus situated, it is obvious that all improvement and advance would be completely checked. And this check upon progress and improvement would be in direct proportion to the extent to which this state of things exists. The case before the Court is an apt illustration. Here are valuable unimproved lots, in a thriving and prosperous town, which the life-tenant cannot with a due regard to his interest improve, and the remainder-men cannot, because their rights are contingent and may never vest. Here also is a suffering family, who may obtain relief by the action of the Court. And they are the first objects of the testator’s bounty. Is there no power in the State, by which the titles of estates may be unfettered from the contingent claims of unborn remainder-men, and their rights not extinguished, but transferred from the property itself to a fund arising from the sale of the property ? I think there should be; I think there is. .
The rules of practice in this Court' as to parties are rules *7 adopted for convenience, and are oftentimes matters . of discretion. If all persons interested, who can be made parties, are brought before the Court, it is sufficient. The Court will go on and try the cause, though it should appear that persons having more remote interests are not represented.
But will the decree of the Court conclude the rights of parties who are not before it? In some cases it will. In cases like the present it will. The Court by its decree acts on the property and disposes of that; while the fund arising from the sale is to be managed under the direction of the Court, in its administrative department. The rights of all the parties in interest will be transferred from the property to the fund, and will be protected by the Court, so far as that is practicable. Nevertheless, if by maladministration, the faithlessness of the officers of the Court, or by any of the untoward accidents of life, the fund should be lost, the original rights of the parties to the property are not thereby revived, but they are concluded. The compensation to them is their interest in the fund arising from the sale, which the Court always means to preserve, and to administer according to the scheme of settlement.
It is necessary to the best interests of society, as I have before intimated, that there should be a power lodged in some judicial tribunal, authorized, in certain exigencies, to unfetter the titles of estates; otherwise they might be shackled to an inconvenient extent. In England, the tenant for life, by suffering fine and recovery, in which he alone is a party, may cut off all contingent limitations and remainders. In that country, Courts of Equity are in the habit, under certain exigencies, of doing the same thing in respect to the title, but with a more just regard to the rights of the remainder-men; for when that Court, by a sale, divests the title of the contingent remainder-men in the property, it preserves for them the fund.
Upon the principle that in an estate tail the tenant for life is the representative of all those who are to succeed him in the enjoyment of the estate, (who take through him derivatively, and by inheritance,) it is held sufficient in England, in all ques *8 tions affecting the title to the estate, to make the tenant for life a party, when no other person in esse is to be found having air interest. In Giffard vs. Hort, (1 Sch. & Lef. 408,) Lord Redesdale says : “ Courts of Equity have determined, on grounds of high expediency, that it is sufficient to bring before the Court the first tenant in tail in being, and if there be no tenant in tail in being, the first person entitled to the inheritance, and if no such person, then the tenant for life.” He further says: “ it has been repeatedly determined, that if there be tenant for life, remainder to his first son in tail, remainder over, and he is brought before the Court before lie has issue, the contingent remainder-men are barred. This is now considered the settled rule of Courts of Equity, and of necessity; and the danger of holding otherwise in the present case, would induce me to hesitate very much, even if I thought that there was less authority on the subject.”
In the case now before the Court, there are no persons having any vested interest or title in the property, except the purchasers of Paul Bofil’s life estate ; and they, with Bofil, and every other person in esse who has a possible future interest in the estate, except the relations in France, (whose names-and very existence are unknown,) are made parties to these proceedings in proper form. This is deemed by the Court entirely sufficient to authorize it to act, and make the titles of the purchasers valid under the sale that has Deen ordered.
The other ground of appeal is, “ because the order did not embrace all the lands devised to Paul Bofil by the testator, Nicholas Herbemont.” The order for the sale was a matter of discretion for the Court. The object of the Chancellor was to raise a fund, the interest or income of which would be sufficient to yield a present and comfortable support to Paul Bofil and his family. And as the lots, omitted in the order of sale, are at present not valuable, and the difference in the price given for the life estate and the fee simple value not very great, and as the said lots may be much appreciated in value by the time the estate of the remainder-men falls in, this Court thinks that the discretion of the Chancellor was properly exercised in omitting *9 said lots in the order for sale. Nevertheless, leave is hereby given to the parties to apply, at the foot of this decree, at any time hereafter, for an order for the sale of said omitted lots ; it being incumbent upon the parties so applying, to make out a case proper for the interference of the Court.
The order of sale by the Circuit Court is unconditional. A peremptory sale of the lots and land might be attended with a sacrifice. They might, under these circumstances, be sold for much less than the estimated value. The whole object of the sale might thus be defeated, and the interests of the remainder-men sacrificed and lost, without any adequate compensation for their rights in the property. It is most expedient, therefore, that the property should not be offered at a peremptory sale, but that the Commissioner should offer each lot and tract of land at the estimated price or value named in his report, as the first bid, to be knocked off at that sum if there should be no higher bid. The decree must be modified in conformity with these views. And it is so ordered and decreed.
From the great improvidence of Paul Bofil, it appears to this Court that it woirld be improper to entrust him with the administration and disbursement of the dividends arising from the fund. So much of the circuit decree as directs the mode of investment, and that the dividends be paid on the joint application and receipt of Paul Bofil and wife, must be rescinded ; and it is so ordered and decreed. It is further ordered that the Commissioner report a scheme for the investment and preservation of the capital fund, and for the prudent disbursement of the annual income arising therefrom.
It is further ordered and decreed that the appeal be dismissed, and that the circuit decree, with the modifications above declared, be affirmed.
JohnstoN, Dunkiw and Wardlaw, CC., concurred.

Decree modified.